IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cr-04017-SRB-1 |
| | ) | |
| MELODY ANN SLOMA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Chief Magistrate Judge Willie J. Epps, Jr.'s Report and Recommendation (Doc. #34) to deny Defendant Melody Ann Sloma's ("Defendant") Motion to Suppress (Doc. #20). Defendant filed an Objection to Report Regarding Motion to Suppress. (Doc. #35.)

After an independent and careful review of the record, the applicable law, and the parties' arguments, the Court DENIES Defendant's Objection (Doc. #35), and ADOPTS Judge Epps's Report and Recommendation (Doc. #34). It is ORDERED that the Report and Recommendation be attached to and made a part of this Order. Defendant's Motion to Suppress (Doc. #20) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT JUDGE

Dated: September 23, 2025

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-04017-SRB-01 |
| | ) | |
| | ) | |
| MELODY ANN SLOMA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Melody Ann Sloma's Motion to Suppress. (Doc. 20). The Government has filed its suggestions in opposition. (Doc. 25). Ms. Sloma has not filed a reply and the time to do so has passed. The Court held a hearing on this matter on September 2, 2025. (Doc. 31). After the hearing, Ms. Sloma filed a supplemental brief without leave of court. (Doc. 32). The issue is now ripe for consideration. For the reasons that follow, it is recommended that the motion be DENIED.

### I. Findings of Fact

Based on the evidence presented at the hearing, the Court submits the following proposed findings of fact:

1. Detective James Ligon is employed by the Pettis County Sheriff's Office ("PCSO"). (Doc. 25 at 2).

2. On September 26, 2024, Det. Ligon applied for and obtained a search warrant to conduct a narcotics search at two residences: 11470 Alexander Road and 11472 Alexander Road. Both residences are located on one parcel of land in Pettis County. (Doc. 25 at 2).

3. The residence at 11470 Alexander Road is a double-wide trailer occupied by Ms. Sloma. (Tr. 35:8-10; Tr. 11:24-25).

4. The residence at 11472 Alexander Road is a single-wide trailer occupied by Ms. Sloma's brother, Richard Buckner. (Tr. 16:15-18; Tr. 35:11-13). The siblings maintain separate residences and do not frequent one another's homes. (Tr. 37:10-20).

5. The affidavit in support of the search warrant prepared by Det. Ligon stated, in relevant part:

> Within the last week, I was contacted by a Reliable Confidential Informant (RCI-1), who stated they observed methamphetamine inside the residence. RCI-1 stated they observed two occupants of the residence in possession of methamphetamine within the last week. RCI-1 stated the methamphetamine was observed on one property but the two trailers involved have separate addresses. The two addresses are 11740 Alexander Road and 11472 Alexander Road, Marshall, Pettis County, Missouri.
>
> 11470 Alexander Road is a double wide trailer. There is a carport attached to the trailer and there are numerous items under the carport. There is a door to the trailer under the carport. On the top of the carport there is spray paint (sic)stating 'Bradley Rocks'. There is an above ground pool next to the trailer.
>
> 11472 Alexander Road is a white in color trailer, a white in color fifth wheel, and a white in color shed. This location is just south of the 11470 Alexander Road location. There is a carport just to the north of the trailer. There is also an underground bunker on the property close to 11468 Alexander Road which belongs to Buckner. RCI-1 stated Buckner will typically store firearms or methamphetamine in the bunker.
>
> RCI-1 stated the two occupants were identified as Melody Sloma and Richard Buckner. Buckner has been convicted of Possession of Cocaine in 1989 by the US Army in Arizona, Narcotics Possession in 1993 in Arizona, Dangerous Drugs in Arizona in 1994, Unlawful Use of Drug Paraphernalia in 2011 in Pettis County, and he was arrested in 2024 in Pettis County for Possession of a Controlled Substance. Sloma has a minor criminal history for theft/passing bad checks. RCI-1 stated they observed firearms in the residence that could possibly be stolen. RCI-1 was made reliable through two (2) felony warrant arrests and two (2) felony drug arrests in the last six (6) months.
>
> In April of 2024, the US Marshal Fugitive Task Force, the Pettis County Sheriff's Office, and the Mid Missouri Drug Task Force located wanted fugitive B.H. at

11472 Alexander Road. A search warrant was applied for and granted for the property at which time methamphetamine was located as well as various drug paraphernalia. Three individuals were arrested at that time including Buckner.

During that time, another reliable confidential informant had observed methamphetamine in the residence which assisted in obtaining a search warrant. RCI-2 was made reliable through seven (7) felony warrant arrests and six (6) felony drug arrests in the last year."

(Gov't Ex. 1 at 2).

6. Det. Ligon testified that his affidavit contained two typographical errors. The affidavit should have read, "the RCI-1 stated they observed methamphetamine in the residences," rather than "the RCI-1 stated they observed methamphetamine in the residence." (Tr. 13:2-10). Further, the affidavit should have stated, "RCI-1 stated they observed two occupants of the residences in possession of methamphetamine," rather than, "RCI-1 stated they observed two occupants of the residence in possession of methamphetamine." (Tr. 13:11-15).

7. Det. Ligon testified that these were typographical errors that he failed to detect and correct prior to submitting the search warrant for approval. (Tr. 12:21-25, 13:1).

8. The search warrant was approved by both a prosecutor and a judge. (Tr. 11:15-20).

9. On that same date, officers with the Mid-Missouri Drug Task Force and deputies with the PCSO executed the warrant. (Tr. 11:21-22).

10. During the execution of the search warrant at 11470 Alexander Road, officers found a large amount of methamphetamine "all over the residence." (Tr. 12:3-4). Officers also recovered stolen firearms during the search. (Tr. 7:11-15; Doc. 25 at 2).

## II. Discussion

On April 8, 2025, a federal grand jury in the Western District of Missouri returned an indictment against Ms. Sloma. (Doc. 1). Ms. Sloma is charged with one count of possession with

intent to distribute methamphetamine, one count of possession of a firearm in furtherance of a drug trafficking crime, and two counts of felon in possession of a firearm. (*Id.*).

On July 2, 2025, Ms. Sloma filed her Motion to Suppress Evidence seeking suppression of evidence seized from her double-wide mobile home (Doc. 20). The motion challenges the constitutionality of the search and seizure of Ms. Sloma's home on the basis that it violated her rights under the Fourth Amendment of the United States Constitution. (Doc. 20 at 9).

### A. Legal Standard

The Fourth Amendment mandates that "no Warrants shall issue…[unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The particularity requirement prohibits officers from conducting general, exploratory rummaging of a person's belongings, and demands that the warrant be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Shrum*, 59 F.4th 968, 973 (8th Cir. 2023) (internal citations and quotations omitted). Whether a warrant fails the particularity requirement "cannot be decided in a vacuum" but must be based on the totality of the circumstances. *Id.* The particularity requirement is "one of practical accuracy rather than hypertechnicality." *Id.* A warrant affidavit may provide the necessary particularity if it is attached to the warrant. *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008).

"Under the *Leon* good-faith exception, 'evidence seized pursuant to a search warrant . . . that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable.'" *United States v. Escudero*, 100 F.4th 964, 968 (8th Cir. 2024) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). Evidence obtained by "officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" will not be suppressed. *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011)

(citing *United States v. Leon*, 468 U.S. 897, 923 (1984)). *Leon* identifies four situations in which an officer's reliance on a warrant is not in objective good faith: "when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; when the issuing judge wholly abandoned his judicial role in issuing the warrant; when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and when the warrant is so facially deficient that no police officer could reasonable presume the warrant to be valid." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (citing *Leon*, 468 U.S. at 923).

When assessing an officer's good faith reliance on a search warrant under the *Leon* good faith exception, the court can look outside of the "four corners of the affidavit" and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit. *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014).

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (citation omitted). If the police fail to abide by the Fourth Amendment, the exclusionary rule, a judicially prescribed remedial measure, "forbids the use of improperly obtained evidence at trial." *Martinez Carcamo v. Holder*, 713 F.3d 916, 922 (8th Cir. 2013) (quotation omitted). The exclusionary rule also governs "evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

"[I]n order to merit a *Franks* hearing, [a defendant] must show both (1) that the affiant . . . 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the

truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (citing *Franks*, 438 U.S. at 171). Specifically, "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007) (quoting *Franks*, 438 U.S. at 171). "The requirement of a substantial preliminary showing is not lightly met." *United States v. Short*, 2 F.4th 1076, 1080 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 626 (2021). "Because 'there is . . . a presumption of validity with respect to the affidavit supporting the search warrant, to mandate [a *Franks*] hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.'" *Williams*, 477 F.3d at 558 (quoting *Franks*, 438 U.S. at 171). "Allegations of negligence or innocent mistake are insufficient." *Id.* at 557 (quoting *Franks*, 438 U.S. at 171).

**B. The officers operated in good faith when executing the search warrant.**

Ms. Sloma argues that the affidavit is not supported by probable cause and is so lacking in probable cause that the good-faith exception should not apply. (Doc. 20 at 15-20). The Government acknowledges that the affidavit as submitted failed to contain information that would have been determinative of probable cause but argues that the *Leon* good-faith exception applies. (Doc. 25 at 1).

    *a. The search warrant is not supported by probable cause.*

Ms. Sloma asserts that the description of the premises in the affidavit prepared by Det. Ligon fails the particularity test. (Doc. 20 at 14). Specifically, she argues that the tip provided by the informant did not specify where the informant saw the methamphetamine and that the affidavit included the "bare-bones conclusion" that both Richard Buckner and Melody Sloma were the "occupants" of both homes. (*Id.* at 14-15). The Government acknowledges that the affidavit as it was submitted failed to contain information that would have been determinative of probable cause due to a drafting error. (Tr. 50:4-9). This Court recommends a finding that, as drafted, the search warrant did not give rise to probable cause to search both residences.

As drafted, the affidavit indicated that the confidential informant had seen methamphetamine in a "residence" on the property occupied by Ms. Sloma and Mr. Buckner. (Gov't Ex. 1 at 2). The affidavit did not pinpoint where exactly on the property methamphetamine was observed by the confidential informant. (Gov't Ex. 1 at 2). It did not clearly indicate that Ms. Sloma and Mr. Buckner live in separate residences and gave the impression that Ms. Sloma and Mr. Buckner occupy both residences described in the affidavit. (Gov't Ex. 1 at 2). Consequently, this Court finds that the search warrant affidavit did not give rise to probable cause to search both residences. However, for the reasons that follow, this Court finds that the good-faith exception to the warrant applies.

> b. *The affidavit is not so obviously lacking indicia of probable cause that the good-faith exception does not apply.*

Ms. Sloma contends that the *Leon* good-faith exception does not apply because Det. Ligon's affidavit was so obviously lacking indicia of probable cause that no reasonably well-trained officer would have relied on it. (Doc. 20 at 16). She argues that the confidential informants upon whom Det. Ligon relied were unreliable. (Tr. 54:1-11). The Government contends that the

*Leon* good-faith exception applies here. (Doc. 25 at 1). This Court recommends a finding that the *Leon* good-faith exception to the exclusionary rule applies to the circumstances of this case.

Det. Ligon's affidavit was not so obviously lacking indicia of probable cause that the *Leon* good-faith exception does not apply. The affidavit did not clearly indicate that Ms. Sloma and Mr. Buckner live in separate residences. (Gov't Ex. 1 at 2). The affidavit also did not pinpoint where on the property methamphetamine was observed by the confidential informant. (Gov't Ex. 1 at 2). However, the affidavit reflected that the confidential informant recently observed methamphetamine on the property, which is described in the affidavit as including both Ms. Sloma's and Mr. Buckner's trailers. (Gov't Ex. 1 at 2). The property is further described by giving the specific addresses belonging to Ms. Sloma and Mr. Buckner and describing the structures present on the property. (*Id.*). The affidavit asserted that methamphetamine activity had been occurring at the property that was the subject of the warrant. (*Id.*).

Further, Det. Ligon was familiar with the property due to a prior search warrant that was executed there approximately five months prior. He had personal knowledge of the residence to be searched. (Doc. 25 at 7; Tr. 9:12-20); *see Farlee*, 757 F.3d at 819 (stating that an officer's knowledge outside of the four corners of the affidavit may be considered in the reasonableness analysis). Both confidential informants who gave the information underlying the search warrant had been made reliable by providing information leading to multiple other arrests. (Gov't Ex. 1 at 2); *Williams*, 477 F.3d at 560 (holding that an informant's reliability may be established through a track record of providing reliable information). A prosecuting attorney and the issuing judge found that Det. Ligon's affidavit provided a basis for probable cause. (Tr. 11:8-20); *see Escudero*, 100 F.4th at 969 (finding that detective reasonably relied on the affidavit when the issuing judge thought the affidavit included sufficient detail for probable cause purposes). The flaw in the

affidavit is merely a typographical error; "residence" instead of "residences." *See Johnson*, 75 F.4th at 844 (typographical error in the warrant did not defeat the validity of the warrant when the place to be searched was adequately described). The warrant was not so lacking in probable cause on its face that a reasonably well-trained officer would not rely on it.

    c. *There is no evidence that Det. Ligon either intentionally or recklessly omitted key facts from the affidavit such that the good-faith exception should not apply.*

Next, Ms. Sloma contends that Det. Ligon either intentionally or recklessly omitted key facts from the affidavit that, if supplied, would have made it obvious that probable cause did not exist. (Doc. 20 at 8). The Government argues that Det. Ligon's mistakes in drafting the affidavit were merely negligent. (Tr. 51:23-25, 52:1). This Court recommends a finding that Det. Ligon was not intentional or reckless in his errors in drafting the affidavit.

Ms. Sloma argues that Det. Ligon intentionally or recklessly omitted key and material facts showing that Ms. Sloma and Mr. Buckner did not live together and that the statement in the affidavit that they lived together was false. (Doc. 20-2 at 1). Det. Ligon testified that he knew that Ms. Sloma and Mr. Buckner did not live together. (Tr. 13:16-23). Det. Ligon testified that he was not trying to give the impression that Ms. Sloma and Mr. Buckner lived together. (Tr. 19:20-24). Det. Ligon testified that he made a mistake while drafting the affidavit. (Tr. 20:16-18).

Ms. Sloma has not introduced any evidence that Det. Ligon was reckless or intentional in his drafting errors such that the good-faith exception should not apply. The Court finds that Det. Ligon's testimony regarding his drafting error was credible. Det. Ligon intended to draft the affidavit to reflect that the confidential informant observed methamphetamine in both residences, which were each described in the affidavit. (Gov't Ex. 1 at 2).

    d. *The* Leon *good faith exception applies.*

The *Leon* good-faith exception provides that evidence seized pursuant to a search warrant that is later determined to be invalid will not be suppressed if the officer's reliance on the warrant was objectively reasonable. *Escudero*, 100 F.4th at 968. As explained above, the affidavit is not so lacking in indicia of probable cause that it was unreasonable for Det. Ligon to rely on it. Additionally, there has been no evidence that Det. Ligon intentionally or recklessly omitted facts or information from the affidavit such that the good-faith exception should not apply. Det. Ligon acted in good faith executing a search warrant which he reasonably believed to be valid.

Accordingly, this Court recommends the District Judge find that the *Leon* good faith exception applies, and the evidence obtained resulting from the search warrant should not be suppressed.

**C. Ms. Sloma has not made the evidentiary showing required for a *Franks* hearing.**

Ms. Sloma also has requested a *Franks* hearing because she alleges that Det. Ligon's statements were false, intentional, or reckless (Doc. 20-2 at 1). The Government argues that the omission of information as to where the confidential informant saw the methamphetamine was merely negligent, and that the substantial showing required for a *Franks* hearing has not been made. (Doc. 25 at 10). This Court recommends that the District Judge find that Ms. Sloma has not made the showing required for a *Franks* hearing to be held.

    *a. Ms. Sloma has not made a sufficient showing that Det. Ligon intentionally or recklessly omitted facts to make the affidavit misleading.*

Ms. Sloma argues that Det. Ligon intentionally or recklessly omitted key and material facts showing that Ms. Sloma and Mr. Buckner did not live together, and that the statement in the affidavit that they lived together was false. (Doc. 20-2 at 1). The Government has set forth an alternative explanation: that Det. Ligon was negligent in his drafting of the affidavit. (Tr. 51:23-

25, 52:1). This Court recommends a finding that the substantial showing required for a *Franks* hearing has not been made.

A *Franks* hearing requires a substantial showing that facts were intentionally or recklessly omitted from the affidavit to make it misleading and that inclusion of those facts would defeat probable cause. *United States v. Johnson*, 75 F.4th 833, 842 (8th Cir. 2023). Allegations of such intent or recklessness, without an offer of proof, are insufficient. *Mathison*, 157 F.3d at 548.

In support of her argument, Ms. Sloma has submitted proof that she and Mr. Buckner do not live together. (Def's Exs. A-K). She testified that her home is entirely separate from Mr. Buckner's home. (Tr. 37:10-21). Ms. Sloma alleges that Det. Ligon was reckless by failing to check tax records for the property or observe mailboxes at the property to determine which residence belonged to whom. (Doc. 20 at 13). However, Det. Ligon testified that he knew that Ms. Sloma and Mr. Buckner did not live together, and that he followed PCSO protocol in checking Pettis County's Geographic Information System ("GIS") to review and analyze the ownership of the property before acquiring the warrant. (Tr. 8:20-25, 9:1-8; 13:16-23).

Ms. Sloma has not introduced any evidence that Det. Ligon was either reckless or intended to make the affidavit misleading. *See Mathison*, 157 F.3d at 548 (allegations of recklessness or intent to mislead without proof in the form of an affidavit or reliable witness testimony are not sufficient to demand a *Franks* hearing). Det. Ligon testified that he was not trying to give the impression that Ms. Sloma and Mr. Buckner lived together. (Tr. 19:20-24). Det. Ligon testified that he made a mistake while drafting the affidavit. (Tr. 20:16-18).

Based on Det. Ligon's credible testimony regarding his drafting error, Det. Ligon intended to draft the affidavit to reflect that the confidential informant observed methamphetamine in both residences, which were each described in the affidavit. (Gov't Ex. 1 at 2). Det. Ligon's negligence

in drafting is not enough to warrant a *Franks* hearing. *Johnson*, 75 F.4th at 842 (holding that mere negligence or an innocent mistake does not warrant a *Franks* hearing). Ms. Sloma has failed to make a showing that Det. Ligon intentionally or recklessly made false statements in the search warrant. *Arnold*, 725 F.3d at 898. Accordingly, this Court recommends that the District Judge find that Ms. Sloma has not made the evidentiary showing required for a *Franks* hearing.

> b. *Ms. Sloma has not made a sufficient showing that the affidavit would no longer establish probable cause if the omitted information had been included.*

The showing required for a *Franks* hearing is twofold; intentional or reckless omission of facts, and a showing that including those facts would defeat probable cause. *Arnold*, 725 F.3d at 898. Ms. Sloma has not shown that the affidavit would no longer establish probable cause if the omitted information had been included. Here, the confidential informant notified Det. Ligon that methamphetamine was found in both residences, which are described in the affidavit by their respective addresses. Ms. Sloma's arguments are no more than conclusory statements and mere allegations that Det. Ligon recklessly or intentionally omitted information from the search warrant. *See Williams*, 477 F.3d at 558 ("Because there is . . . a presumption of validity with respect to the affidavit supporting the search warrant, to mandate [a *Franks*] hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.") (internal quotation omitted). Therefore, this Court recommends that the District Judge find that a *Franks* hearing is not warranted.

**D. The observations made, statements made, and evidence obtained pursuant to the search and seizure do not constitute fruit of the poisonous tree.**

Ms. Sloma argues that all evidence seized or otherwise obtained or is the fruit of the alleged illegal search of Ms. Sloma's home on September 26, 2024 should be suppressed. (Doc. 20-3 at 1). The Government argues that the extreme remedy of suppression is not appropriate here. (*See* Doc. 25 at 8-9). This Court recommends that the District Judge find that the evidence obtained

from the search does not constitute fruit of the poisonous tree and was obtained pursuant to a search warrant that was executed in good faith.

Evidence seized by an officer reasonably relying on a search warrant which he believed to be valid will not be suppressed. *Clay*, 646 F.3d at 1127. In this case, Det. Ligon reasonably relied on the search warrant, which he believed provided probable cause and was approved by a prosecuting attorney and judge. (Tr. 11:8-20). The evidence obtained is therefore not "derivative of an illegality or fruit of the poisonous tree." *Tuton*, 893 F.3d at 568 (quotation omitted).

This Court recommends that the District Judge find that the evidence obtained from the search does not constitute fruit of the poisonous tree and was obtained pursuant to a search warrant that was executed in good faith.

### III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, enter an order DENYING Defendant Melody Ann Sloma's Motion to Suppress.

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation that are accepted or adopted by the District Judge, except on the grounds of plain error or manifest injustice.

Dated this 8th day of September 2025, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
Chief United States Magistrate Judge